## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| _____ | ) | |
| MILITARY CERTIFIED RESIDENTIAL | ) | |
| SPECIALIST, LLC  and MILRES, LLC | ) | |
|  | ) | Civil Action No. 16-cv-166-SLR |
| *Plaintiffs* | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| FAIRWAY INDEPENDENT MORTGAGE | ) | |
| CORPORATION | ) | |
|  | ) | |
| *Defendant* | | |
| _____ | | |

## DEFENDANT FAIRWAY INDEPENDENT MORTGAGE CORPORATION'S
## BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

RATNER PRESTIA
Rex A. Donnelly
Christopher H. Blaszkowski
1007 Orange Street, Suite 205
Wilmington, DE  19801
302-778-2500

*Attorneys for Fairway Independent Mortgage
Corporation*

Dated: June 3, 2016

TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II.   STANDARD FOR A MOTION TO DISMISS ................................................................. 2

III.  ARGUMENT ............................................................................................................. 3

   A.   A Supplemental Registration, Without More, Is Not Evidence Of Validity ..................................... 3

   B.   Plaintiffs Have Not Plausibly Stated a Claim That Military Certified Residential Specialist is a
   Valid Trademark ................................................................................................................................ 5

      1.   Plaintiff Conceded a Lack of Secondary Meaning in Military Certified Residential Specialist on
      a Date After Plaintiff's Use Began ................................................................................................. 5

      2.   The Complaint Ignores the Deceptive Nature of Military Certified Residential Specialist .......... 6

   C.   The Complaint Fails to Plead Any Facts to Plausibly State a Claim  That Military Residential
   Specialist Is Not Generic or  So Highly Descriptive As To Be Unregistrable ........................................ 7

   D.   The Complaint Fails To Allege Likelihood Of Confusion  Between Any Name Used By
   Defendants And MilRES ................................................................................................................... 9

   E.   Analogous State and Common Law Trademark Claims  Require Pleading With the Same Level of
   Specificity as Federal Claims ............................................................................................................ 11

      1.   Plaintiffs Fail To Allege Enforceable Rights to Establish a Plausible Claim for Dilution Under
      The Delaware Trademark Act (Count III) ....................................................................................... 11

      2.   Plaintiffs Also Fail To Allege Rights Enforceable Under The  Delaware Deceptive Trade
      Practices Act (Count IV) ................................................................................................................. 12

   F.   Plaintiffs Must Identify and Properly Plead Valid Rights in  Asserted Unregistered Marks and
   Trade Dress ...................................................................................................................................... 13

   G.   Plaintiffs Fail to Plead Unjust Enrichment with Specificity .......................................................... 14

   H.   Plaintiffs' Interference Pleading Omits Essential Elements  And Is At Least Partially Preempted
   by Copyright Law .............................................................................................................................. 15

      1.   Claims Based on "Copying" are Preempted ............................................................................. 16

      2.   Plaintiffs Fail to Allege Why Certain Alleged Conduct  is Not Privileged or How it Proximately
      Caused Damage .............................................................................................................................. 17

IV.  CONCLUSION ............................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  166 F.3d 197 (3d Cir. 1999) ................................................................................ 10

*A & H Sportswear, Inc. v. Victoria's Secret Stores*, Inc.,
  237 F.3d 198 (3d Cir. 2000) ................................................................................ 10

*A.J. Canfield Co. v. Honickman*,
  808 F.2d 291 (3d Cir. 1986) ........................................................................ 4, 8, 9

*Agilent Techs., Inc. v. Kirkland*,
  2009 WL 119865 (Del.Ch. Jan. 20, 2009) ......................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 3, 7

*Association Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*,
  459 U.S. 519 (1983) ............................................................................................. 3

*Barnes Grp. Inc. v. Connell Ltd. P'ship*,
  793 F. Supp. 1277 (D. Del. 1992) ...................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 2

*Bistrian v. Levi*,
  696 F.3d 352 (3d Cir. 2012) ................................................................................. 3

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ........................................................................... 11

*Clark v. Walt Disney Co.*,
  642 F. Supp. 2d 775 (S.D. Ohio 2009) ................................................................ 8

*Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*,
  214 F.3d 432 (3d Cir. 2000) .......................................................................... 4, 13

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ............................................................................................. 17

*DeBonaventura v. Nationwide Mut. Ins. Co.*,
  428 A.2d 1151 (Del.1981) .................................................................................. 16

*Delaware Exp. Shuttle, Inc. v. Older*,
  2002 WL 31458243 (Del. Ch. Oct. 23, 2002) .................................................... 15

*Dranoff-Perlstein Associates v. Sklar*,
  967 F.2d 852 (3d Cir. 1992) ................................................................................. 8

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
  307 F.3d 197 (3d Cir. 2002) ............................................................................... 17

*Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*,
  40 F.3d 1431 (3d Cir. 1994) ............................................................................... 13

*Fair Wind Sailing, Inc. v. Dempster*,
  764 F.3d 303 (3d Cir. 2014) ............................................................................... 15

*Farberware, Inc. v. Mr. Coffee, Inc.*,
  740 F. Supp. 291 (D. Del. 1990) ........................................................................ 13

*Finger Furniture Co., Inc. v. Mattress Firm, Inc.,*
   2005 WL 1606934 (S.D. Tex. 2005) ................................................................ 5, 9

*Fisons Horticulture, Inc. v. Vigoro Industries, Inc.,*
   30 F.3d 466 (3d Cir.1994)................................................................................... 4

*Ford Motor Co. v. Summit Motor Products, Inc.,*
   930 F.2d 277 (3d Cir.), *cert. denied,* 502 U.S. 939 (1991) .............................. 4

*Fowler v. UPMC Shadyside,*
   578 F.3d 203 (3d Cir. 2009)............................................................................... 2

*Gold Seal Co. v. Weeks,*
   129 F. Supp. 928 (D. D.C. 1955) ..................................................................... 7

*In re Boston Beer Co. Ltd. P'ship,*
   198 F.3d 1370 (Fed. Cir. 1999)......................................................................... 9

*In re Burlington Coat Factory Sec. Litig.,*
   114 F.3d 1410 (3d Cir. 1997)............................................................................. 3

*In Re Federated Dep't Stores Inc.,*
   1987 WL 124292 (TTAB 1987) ....................................................................... 4

*Interpace Corp. v. Lapp, Inc.,*
   721 F.2d 460 (3d Cir. 1983)............................................................................. 10

*Keystone Consol. Indus., Inc. v. Mid-States Distrib. Co.,*
   235 F. Supp. 2d 901 (C.D. Ill. 2002) ............................................................... 4

*Marvel Enterprises, Inc. v. NCSoft Corp.,*
   2005 WL 878090 (C.D. Cal. 2005)................................................................. 10

*Mitchell Lane Publishers, Inc. v. Rasemas,*
   2014 WL 4925150 (Del. Ch. Sept. 30, 2014) ................................................ 12

*Monsanto Co. v. Syngenta Seeds, Inc.,*
   443 F. Supp. 2d 648 (D. Del. 2006)................................................................ 12

*Nemec v. Shrader,*
   991 A.2d 1120 (Del. 2010) .............................................................................. 14

*Novartis Consumer Health, Inc. v. McNeil-PPC, Inc.,*
   1999 WL 7077214 (D.N.J. Sept. 13, 1999) ................................................. 4, 5

*Orson,  Inc. v. Mirimax Film Corp.,*
   189 F.3d 377 (3d Cir. 1999)............................................................................ 16

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
   998 F.2d 1192 (3d Cir. 1993)............................................................................. 3

*S.C. Johnson & Son v. Gold Seal Co.,*
   230 F.2d 832 (D.C. Cir.) (per curiam), *cert. denied,* 352 U.S. 829 (1956)............... 7

*Scott Paper Co. v. Scott's Liquid Gold, Inc.,*
   589 F.2d 1225 (3d Cir.1978)............................................................................. 4

*Solow Bldg. Co., LLC v. Nine West Group, Inc.,*
   No. 00 Civ. 7685, 2001 WL 736794 (S.D.N.Y. June 29, 2001) ................... 11

*Tegg Corp. v. Beckstrom Elec. Co.,*
   650 F. Supp. 2d 413 (W.D. Pa. 2008)............................................................ 17

*U.S. Bank Nat'l Ass'n v. Gunn,*
   23 F. Supp. 3d 426 (D. Del. 2014).................................................................. 16

*Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
    No. 12 Civ. 3599, 2012 WL 3240442 (S.D.N.Y. Aug. 7, 2012) ............................................................. 5

*Wal-Mart Stores, Inc. v. Samara Bros.*,
    529 U.S. 205 (2000) ......................................................................................................................... 13

## Statutes

15 U.S.C. § 1057(b) ................................................................................................................................. 4

15 U.S.C. § 1125(a) ................................................................................................................................. 3

15 U.S.C. §§ 1114(1) ............................................................................................................................... 3

17 U.S.C. § 106 ...................................................................................................................................... 16

17 U.S.C. § 301(a) ................................................................................................................................. 16

6 Del. Code § 3313 ................................................................................................................................ 11

F.R.C.P. 8(a)(2) ........................................................................................................................................ 2

Fed. R. Evid. § 201 .................................................................................................................................. 8

## Other Authorities

3 *McCarthy on Trademarks and Unfair Competition* §19:43 (4th Ed. 2014) ........................................ 5, 6

5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1216, pp. 235–36 (3d ed. 2004) ................. 2

*Nimmer on Copyright*, § 1.01[B][3][a][ii] ............................................................................................ 17

v

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Military Certified Residential Specialist, LLC and MilRES, LLC filed their complaint [D.I. 1] on March 17, 2016.  The Parties subsequently field four stipulated motions for extensions of time for defendant to answer or otherwise respond [D.I. 5 - D.I. 8], which the Court granted, ultimately extending Defendant's deadline for response until June 3, 2016.

Plaintiffs assert rights in three federal trademark registrations -- **MilRES** (registered on the Principal Register on February 14, 2012), **Military Residential Specialist** (registered on the Supplemental Register on July 3, 2012), and **Military Certified Residential Specialist** (registered on the Supplemental Register March 18, 2015). Plaintiffs allege these "marks" are used in connection with services described by Plaintiffs as "educational programs and classes . . . through which real estate agents can gain knowledge and expertise to assist . . . **military** personnel and their families with **real estate** services, and obtain a **certification** as a **specialist** in this area."  Plaintiffs accuse Defendant of trademark infringement, unfair competition, and unjust enrichment, and interference, for using the designation **Certified Military Residential Specialist** in connection with its own educational seminars for educating and certifying real estate professionals to specialize in providing residential real estate services to members of the military.

The Complaint fails to allege sufficient facts to establish a plausible claim that Plaintiff had an enforceable right in either **Military Residential Specialist** or **Military Certified Residential Specialist** at the time Defendant commenced use of its designation.  First, the Compliant fails to make a threshold showing that **Military Certified Residential Specialist** or **Military Residential Specialist** are protectable as marks.  Second, the Complaint nowhere

alleges secondary meaning or acquired distinctiveness in the asserted terms, a prerequisite for establishing plausible validity for registrations listed only on the Supplemental Register.

The Complaint also fails to allege confusing similarity between any term used by Defendant (or its affiliates[1]) and **MilRES** in standard characters, which is the only presumptively valid registration owned by Plaintiffs.  The remaining claims in the Complaint fail to state a claim upon which relief can be granted because of a failure to plead the essential elements required to state a claim for trademark infringement, a failure to plead with requisite specificity that provides notice of the claims and relief requested, and/or because of preemption by federal copyright law.

## II.      STANDARD FOR A MOTION TO DISMISS

To survive a motion to dismiss for failure to state a claim under 12(b)(6), plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). While a pleading of "detailed factual allegations" is not required, any factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Id.* at 1964–65.  Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. *Id.* at 1965 n. 3. "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 1965, quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1216, pp. 235–36 (3d ed. 2004).  A complaint that merely alleges entitlement to relief, without alleging facts that show such entitlement, must be dismissed. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  The Court cannot

---

[1] The Certified Military Residential Specialist programs sponsored by Fairway are currently advertised and operated by the American Warrior Initiative (AWI), a non-profit initiative of Fairway operated under the Fairway Foundation, a 501(c)(3) nonprofit organization.

simply assume Plaintiffs will prove facts they have not alleged.  *Association Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

A determination of whether a complaint meets the pleading standard requires the Court to consider the elements a plaintiff must plead to a state a claim for relief, then "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth," and finally, "look for well-pled factual allegations, assume their veracity, and 'determine whether they plausibly give rise to an entitlement to relief,'" drawing on the Court's "'judicial experience and common sense.'" *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) quoting *Iqbal*, 556 U.S. at 675, 679.

In deciding a motion to dismiss, a court may (without converting the motion to one for summary judgment) properly look beyond the complaint to documents referenced in the complaint or documents attached to a defendant's motion that are essential to a plaintiff's claim, including public records or undisputedly authentic documents upon which the plaintiff's claims are based.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.    ARGUMENT

### A.    A Supplemental Registration, Without More, Is Not Evidence Of Validity

The elements of trademark infringement or false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), require a showing that: (1) the asserted mark is valid and legally protectable; (2) the asserted mark is owned by the plaintiff; and (3) the defendant's use of the asserted mark to identify goods or services is likely to create confusion concerning the origin of the goods or services associated with the asserted mark. *Fisons Horticulture, Inc. v. Vigoro*

*Industries, Inc.,* 30 F.3d 466, 472, 473 (3d Cir.1994) (citing *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 291 (3d Cir. 1991), *cert. denied,* 502 U.S. 939 (1991)).

Registration of a mark on the Supplemental Register rather than the Principal Register "has definitive legal significance." *Novartis Consumer Health, Inc. v. McNeil-PPC, Inc.*, 1999 WL 707721, at *4 (D.N.J. Sept. 13, 1999). Registration on the Principal Register provides "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate" of registration. 15 U.S.C. § 1057(b). By contrast, registration on the Supplemental Register does not entitle a mark to any of these statutory presumptions. *Novartis,* 1999 WL 707721, at *4. *See also Keystone Consol. Indus., Inc. v. Mid-States Distrib. Co.,* 235 F. Supp. 2d 901, 913 (C.D. Ill. 2002) citing *In Re Federated Dep't Stores Inc.*, 1987 WL 124292 (TTAB 1987)("It is overwhelmingly agreed that a Supplemental Register registration is evidence of nothing more than the fact that the registration issued on the date printed thereon."). A term that is generic or is "descriptive but lacks sufficient secondary meaning" is not protectable. *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 292 (3d Cir. 1986). A generic term is not protectable even if it acquires "*de facto* secondary meaning." *Id.* at 297.

"A plaintiff must establish secondary meaning in a mark at the time and place that the defendant began use of the mark." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) ("Secondary meaning exists when the mark 'is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services.'") quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1228 (3d Cir.1978). Application on the Supplemental Register

4

"is an admission against interest that the term is not inherently distinctive and does not yet have secondary meaning." 3 *McCarthy on Trademarks and Unfair Competition* §19:43 (4th Ed. 2014)*; accord, Novartis Consumer Health*, at *5 (citing 3 *McCarthy* 19:36: "The 'very presence [of a mark] on the Supplemental Register indicates a preliminary determination that the mark is not distinctive of the applicant's goods.'").

The Complaint concedes that both **Military Residential Specialist** and **Military Certified Residential Specialist** (the "Supplemental Registrations") are only registered on the Supplemental Register, but fails to allege these terms had attained secondary meaning or acquired distinctiveness at any time, let alone prior to Defendant's first use of **Certified Military Residential Specialist**. *See, e.g., Finger Furniture Co., Inc. v. Mattress Firm, Inc.*, 2005 WL 1606934, at *4 (S.D. Tex. 2005) (dismissing complaint under 12(b)(6) for lack of allegations of consumer survey evidence or direct consumer testimony in support of its claim of secondary meaning); *see also Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 Civ. 3599, 2012 WL 3240442, at *6-7 (S.D.N.Y. Aug. 7, 2012) (dismissing trade dress infringement claim under 12(b)(6) because "[a]lthough the Amended Complaint does allege that Plaintiff's trade dress case has become associated with [plaintiff] in the eyes of the public, there are no facts alleged to support this conclusory claim"). Here, Plaintiffs do not even outline a conclusory allegation of secondary meaning, let alone plead any facts to support such an allegation. Accordingly, any claims based upon the Supplemental Registrations should be dismissed for failing to plead secondary meaning.

**B.** **Plaintiffs Have Not Plausibly Stated a Claim That Military Certified Residential Specialist is a Valid Trademark**

*1.* *Plaintiff Conceded a Lack of Secondary Meaning in Military Certified Residential Specialist on a Date After Plaintiff's Use Began*

5

The Complaint states Plaintiffs commenced use of **Military Certified Residential Specialist** on January 1, 2013, filed an application for federal registration April 11, 2013, and amended that application to the Supplemental Register on March 18, 2015. [D.I. 1, ¶¶ 16-17]. USPTO public records show Plaintiffs' amendment to the Supplemental Register was unconditional. See Exhibit 1[2]. "[U]nconditional amendment of an application for registration on the Principal Registration to become an application for the Supplemental Register is a concession that the term is not inherently distinctive." *See* 3 *McCarthy* §19:43, and cases cited therein.

The Complaint alleges no set of facts to counter Plaintiffs' prior admission against interest that the **Military Certified Residential Specialist** lacked inherent distinctiveness and secondary meaning at least as late as March 18, 2015, long after "on or about May of 2014," when Plaintiffs claim they "learned for the first time" of Defendant's use of **Certified Military Residential Specialist**.[3] [D.I. 1, ¶¶ 25]. The Complaint does not even attempt to plead any facts to support acquisition of secondary meaning prior to Defendant's first use. Before getting to the issue of secondary meaning, however, Plaintiffs must first state a plausible claim that **Military Certified Residential Specialist** is protectable at all, regardless of secondary meaning.

### 2. *The Complaint Ignores the Deceptive Nature of Military Certified Residential Specialist*

Section 2 of the Lanham Act forbids registration of "deceptive . . . matter" on both the Principal Register (Section 2(a)) and the Supplemental Register (Section 2(f)). *See, e.g., Gold*

---

[2] Exhibit 1, a document from the file history of the subject registration, the authenticity of which Plaintiffs cannot dispute, was downloaded from the publically accessible Trademark Status & Document Retrieval (TSDR) database maintained by the U.S. Patent and Trademark Office, and constitutes a public document that is essential to Plaintiffs' claim of rights based upon the subject Supplemental Registration.

[3] Defendant's first **Certified Military Residential Specialist** programs were actually conducted at least as early as April 2013, but this fact need not be considered to rule on this Motion to Dismiss, taking the Complaint as it currently stands.

*Seal Co. v. Weeks*, 129 F. Supp. 928 (D. D.C. 1955), aff'd sub nom. *S.C. Johnson & Son v. Gold Seal Co.*, 230 F.2d 832 (D.C. Cir.) (per curiam), *cert. denied*, 352 U.S. 829 (1956). ("[D]eception is found when an essential and material element is misrepresented, is distinctly false, and is the very element upon which the customer relies in purchasing one product over another.").

At least one reasonable, common sense interpretation of a designation comprising the sequential pairing of "Military Certified" with "Residential Specialist" is that it refers to a residential specialist who has been certified by the military. On information and belief, neither Plaintiffs' courses, nor the attendees of such courses, are ***certified by the military***.  The Complaint fails to plead otherwise.

The sufficiency of a plaintiff's allegations is "inextricably intertwined with" and "directly implicated by" the defenses associated with the relevant claims. *Iqbal*, 556 U.S. at 673. A deceptive mark is not valid. Accordingly, a crucial element of pleading validity for a mark that is vulnerable to invalidation as deceptive, includes stating a plausible claim that the mark is not deceptive. A threshold showing that **Military Certified Residential Specialist** is a valid trademark must therefore include well pleaded allegations that plausibly state a claim that (a) the term "Military Certified" is not distinctly false when used to refer to Plaintiffs' courses or the attendees thereof, and/or (b)(i) real estate agents would not believe or materially rely upon a representation that Plaintiffs' course is "Military Certified," and (ii) military families in need of a residential specialist would not believe or materially rely upon the designation conferred upon attendees of Plaintiffs' programs as a representation that those attendees are "Military Certified."

**C.      The Complaint Fails to Plead Any Facts to Plausibly State a Claim
That Military Residential Specialist Is Not Generic or
So Highly Descriptive As To Be Unregistrable**

7

The Third Circuit has articulated the following test to determine whether a term is generic:

> *If a producer introduces a product that differs from an established product class in a particular characteristic, and uses a common descriptive term of that characteristic as the name of the product, then the product should be considered its own genus. Whether the term that identifies the product is generic then depends on the competitors' need to use it.*

*Canfield*, 808 F.2d at 305–306.

The term "military" is defined as "of or relating to soldiers or the armed forces (such as the army, navy, marines, and air force);" "residential" is defined as "of or relating to the places where people live;" and "specialist" is defined as "a person who has special knowledge and skill relating to a particular job, area of study, etc." *Merriam-Webster Learner Dictionary*, learnersdictionary.com, 2016, attached as Exhibit 2.[4] Plaintiffs have pleaded nothing to state a claim that the term "military residential specialist" when used in connection with Plaintiffs' programs and their real estate agent attendees means anything other than *a person who has special knowledge and skill relating to their job as a real estate agent relating to the places where members of the armed forces live*, which meaning naturally follows from the ordinary definitions of the words from which that phrase is formed, and also happens to identify the product (i.e. the attendees) of Plaintiffs' programs. And nowhere does the Complaint allege, let alone plead facts tending to support a claim for relief, that competitors, including Defendant, can effectively communicate the nature of their own seminars and the attendees thereof without using the term "military residential specialist." *See, e.g., Dranoff-Perlstein Associates v. Sklar*, 967 F.2d 852, 860 (3d Cir. 1992) (finding on Summary Judgment that "at least with regard to personal injury lawyers, no commonly used alternative to the word "injury" would effectively

---

[4] A Court may take judicial notice of dictionary definitions without converting the motion into a motion for summary judgment. *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 782 (S.D. Ohio 2009) citing *Federal Rule of Evidence* § 201.

communicate the same information, because the word "injury" is integrally related to a "distinctive characteristic" of the services being provided).

Dismissal is appropriate under 12(b)(6) for failure to plead a valid and enforceable mark. *See, e.g., Finger Furniture*, 2005 WL 1606934, at *4 (dismissing Complaint because "SLEEP FREE" was "not a protectable mark"). "[A] phrase or slogan can be so highly laudatory and descriptive as to be incapable of acquiring distinctiveness as a trademark. *In re Boston Beer Co. Ltd. P'ship*, 198 F.3d 1370, 1373-74 (Fed. Cir. 1999) (finding the slogan BEST BEER IN AMERICA "does not and could not function as a trademark to distinguish Boston Beer's goods and serve as an indication of origin"). If "no commonly used alternative effectively communicates the same functional information, the term that denotes the product is generic . . . otherwise, a grant of trademark status could effectively prevent a competitor from marketing a product with the same characteristic despite its right to do so under the patent laws." *Canfield,* at 306 (3d Cir. 1986).

Thus, pleading trademark rights in **Military Residential Specialist** sufficient to state a claim requires Plaintiffs to first plead facts to plausibly support a claim that the asserted collection of words is not generic or so highly descriptive that they are ineligible for protection. Then, Plaintiffs must further plead facts that would support a plausible claim that **Military Residential Specialist** had acquired secondary meaning prior to Defendant's first use of **Certified Military Residential Specialist**, notwithstanding Plaintiffs' unconditional amendment of the application for **Military Residential Specialist** to the Supplemental Register on April 24, 2012 (Exhibit 3), which amendment constitutes as an admission against interest that no secondary meaning existed as of that date.

### D.   The Complaint Fails To Allege Likelihood Of Confusion Between Any Name Used By Defendants And MilRES

Plaintiffs have identified only a single registration on the Principal Register for which it enjoys a presumption of validity -- **MilRES** in "standard characters." The Complaint does not attach a copy of the Registration Certificate, and confusingly depicts a logo in Paragraph 13 that is not the drawing corresponding to the cited registration. To clarify the record, the Certificate of Registration for **MilRES** is attached hereto as Exhibit 4.[5] **MilRES** in standard characters shares only the first three letters of the second word "Military" and the first three letters of the third word "Residential" in the accused term **Certified Military Residential Specialist**. The appropriate standard for determining trademark infringement under the Lanham Act is likelihood of confusion. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 205 (3d Cir. 1999). The Third Circuit employs a set of factors known as the "*Lapp* factors" to test for likelihood of confusion. *A & H Sportswear, Inc. v. Victoria's Secret Stores*, Inc., 237 F.3d 198, 215 (3d Cir. 2000). The first of these factors is "similarity of the marks." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983) ("Where the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself.") *A & H Sportswear*, 237 F.3d at 214 ("when goods are directly competing, both precedent and common sense counsel that the similarity of the marks takes on great prominence.").

"If the pleadings show that confusion between the alleged infringing term and the registered trademark is unlikely, the claim for infringement should be dismissed." *Marvel Enterprises, Inc. v. NCSoft Corp.*, 2005 WL 878090, at *4 (C.D. Cal. 2005) (finding likely confusion "unreasonable as Defendants word 'Statesman' is obviously not a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' trademarked words 'Captain America.'");

---

[5] Also downloaded from the TSDR database maintained by the USPTO.

*Solow Bldg. Co., LLC v. Nine West Group, Inc.*, No. 00 Civ. 7685, 2001 WL 736794, at *6-7 (S.D.N.Y. June 29, 2001) (granting Rule 12(b)(6) motion to dismiss trademark count because "[b]ased on the facts alleged, no legal claim exist[ed]" where "the Complaint makes no allegations at all as to five of the *Polaroid* [likelihood of confusion] factors …."). *See also*, *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999)("Where the two marks are entirely dissimilar, there is no likelihood of confusion.")

While an allegation that the term MilRES in standard characters and the phrase Certified Military Residential Specialist are visually or phonetically "similar" would strain credulity, the Complaint does not specifically allege infringement on that basis. After introduction of Plaintiffs' various registrations in the early paragraphs of the Complaint, the alleged "marks" are all lumped together in shotgun fashion for the remaining allegations and Counts, thereby failing to give Defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 545.

### E.    Analogous State and Common Law Trademark Claims Require Pleading With the Same Level of Specificity as Federal Claims

#### 1.    *Plaintiffs Fail To Allege Enforceable Rights to Establish a Plausible Claim for Dilution Under The Delaware Trademark Act (Count III)*

A showing of dilution under the Delaware Trademark Act requires a showing of "a mark registered under this chapter, or a mark valid at common law or a trade name valid at common law." 6 Del. Code § 3313.  The Complaint identifies no marks registered under the Delaware Trademark Act.  For the Supplemental Registrations, Plaintiffs must plead facts that would establish a valid trademark or trade name right.  "Proof of distinctiveness necessary to satisfy the antidilution statutes typically is the same proof used to show inherent or acquired distinctiveness for infringement purposes under the Lanham Act." *Barnes Grp. Inc. v. Connell Ltd. P'ship*, 793 F. Supp. 1277, 1304 (D. Del. 1992). For the **MilRES** registration, the Complaint fails to provide

11

notice as to whether Plaintiffs contend **MilRES** in standard characters has been diluted, and if so, to identify the term(s) used by Defendant that allegedly create(s) the requisite mental association required to state a claim for dilution. Some degree of "mental association between the marks is necessary for a dilution claim." *Id.* (finding use of marks that are "visually distinct" tended "to reinforce the distinction between the products"). The Complaint fails to allege that **MilRES** in standard characters is visually similar to, or otherwise creates the required mental association with, any term allegedly used by Defendant.

### 2. *Plaintiffs Also Fail To Allege Rights Enforceable Under The Delaware Deceptive Trade Practices Act (Count IV)*

The Deceptive Trade Practices Act "affords no greater protection than the Lanham Act." *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 653 (D. Del. 2006).  The Delaware Deceptive Trade Practices Act codifies the 1964 Uniform Deceptive Trade Practices Act, which in turn, codifies the common law of unfair competition, and "was not intended to create a new cause of action distinct from the common law protections designed to secure businesses against the deceptive trade practices of others."  *Mitchell Lane Publishers, Inc. v. Rasemas*, 2014 WL 4925150, at *8 (Del. Ch. Sept. 30, 2014) (claims brought pursuant to Section 2532(a)(2) "are to be based on the 'approval, endorsement, or certification of goods or services caused by trademarks, service marks, certification marks, or collective marks likely to be associated with preexisting trade symbols,' or by 'misleading trade names.'")

Accordingly, Plaintiffs' conclusory allegations of a "likelihood of confusion" in Count IV cannot be sustained without first pleading specific and valid trademark rights sufficient to provide notice to the Defendant of the nature of the claim.  For example, does the alleged "likelihood of confusion" in Count IV relate only to the Supplemental Registrations, or also to **MilRES** in standard characters, or does it additionally encompass the unspecified "unregistered

marks" and trade dress referenced in Count V? Do Plaintiffs assert that **Certified Military Residential Specialist** and **MilRES** in standard characters are so similar as to create a likelihood of confusion? The pleadings as they currently stand provide Defendant no insight into Plaintiffs' specific allegations, and thus fail to provide fair notice of what the claim is and the grounds upon which it rests.

    F.    **Plaintiffs Must Identify and Properly Plead Valid Rights in Asserted Unregistered Marks and Trade Dress**

Count V references marks "in addition to the federal trademark registrations owned by Plaintiffs," but fails to identify with specificity the alleged "marks in various forms, iteration and styles and other unregistered marks incorporating similar designs in connection with a broad range of goods and services" asserted in Paragraph 61 or the "associated trade dress" asserted in Paragraph 63.  [D.I. 1, ¶¶ 61, 63].  For an unregistered mark to be valid, it must have secondary meaning or be inherently distinctive.  *Commerce Nat. Ins. Servs*, 214 F.3d at 438.  Plaintiffs have pleaded neither secondary meaning nor inherent distinctiveness for any alleged unregistered mark, having failed to even specifically identify the alleged marks they assert.

The elements of trade dress infringement under the Lanham Act requires a showing that "(i) the trade dress is distinctive, either because it is inherently distinctive or because it has acquired distinctiveness; (ii) the trade dress is nonfunctional; and (iii) the defendant's use of plaintiff's trade dress is likely to cause consumer confusion."  *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 1439 (3d Cir. 1994); *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 216 (2000) ("[product configuration] design, like color, is not inherently distinctive"); *Farberware, Inc. v. Mr. Coffee, Inc.,* 740 F. Supp. 291, 305 (D. Del. 1990)("Delaware law requires a showing not unlike the federal standard").

Because Count V fails to provide fair notice to Defendant what unregistered marks and trade dress are asserted and the grounds upon which the count rests, including stating a plausible claim that any such asserted marks or trade dress are valid, the count must be dismissed.

### G.        Plaintiffs Fail to Plead Unjust Enrichment with Specificity

Count VI, for Common Law Unjust Enrichment, alleges harm arising from "Defendant's adoption of their names and logos being substantially identical to Plaintiffs' marks,"[D.I. 1, ¶68] but fails to (a) identify which of Plaintiffs' alleged marks are relied upon for this count, (b) plead facts showing a valid trademark right in each asserted mark, and (c) identify which names and logos used by Defendants are allegedly "substantially identical" to each asserted mark.

The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Showing the "absence of justification" and the "relation between the enrichment and impoverishment" needed to establish a plausible claim for unjust enrichment requires non-conclusory allegations supported by the same types of factual showings that must be pleaded to state a plausible claim of a valid trademark right in specifically identified marks, along with a plausible allegation that *likelihood of confusion* between some name or logo of Defendant and an asserted valid mark of Plaintiff proximally caused the alleged enrichment and impoverishment. As noted above, the pleadings fail to meet that burden. Only **MilRES** in standard characters, on the Principal Register, enjoys a presumption of a valid trademark right, but nowhere does the Complaint, in this Count or any other, provide notice as to whether Plaintiffs assert that Defendant uses a name or logo that is "substantially identical" to **MilRES** in standard characters sufficient to plead the requisite relationship between the alleged enrichment and impoverishment.

14

Additionally, the Complaint contains no facts concerning *in what respect* Defendants have been allegedly enriched. *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 312 (3d Cir. 2014)(dismissing unjust enrichment count, noting that had Plaintiff alleged that "Defendants' business accrued additional *profits* by poaching Fair Wind's proprietary information and trade secrets," it might have satisfied Rule 8(a)(2)'s fairly lenient notice-pleading standard, but "the bald assertion that Defendants 'have been enriched' does not.") (emphasis added).  Plaintiffs make a conclusory allegation that Defendant "has been enriched by *revenues* associated with the Certified Military Residential specialist and Military Residential Specialist names, logos, and domain name." [D.I. 1, ¶ 67] (emphasis added), but this directly contradicts allegations in the interference count that Defendant was "offering courses for free." [D.I. 1, ¶ 72]. Enrichment requires profits, not simply revenue. *Delaware Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *15 (Del. Ch. Oct. 23, 2002)("Defendants' profits, not their revenues, are the correct measure of their unjust enrichment.")  As Defendant's accused programs are currently administered by its affiliated non-profit foundation (*supra*, footnote 1), allegedly for "free,"[6] the requirement to at least plead how Defendant has allegedly profited is not merely academic. By pleading only non-specific revenues, Plaintiffs have failed to state a claim that Defendant has been enriched, and by failing to state a claim for infringement of a valid trademark, Plaintiffs have failed to plead an unjustified act.  For those reasons, Plaintiffs' unjust enrichment count must be dismissed.

H.    **Plaintiffs' Interference Pleading Omits Essential Elements And Is At Least Partially Preempted by Copyright Law**

The elements of a claim for tortious interference with a prospective business opportunity include: "(1) the reasonable probability of a business opportunity; (2) the intentional interference

---

[6] For clarity, the accused programs are now actually offered for a nominal fee intended to cover operating expenses, but this does not change Plaintiff s' burden of pleading *Defendant's* enrichment.

15

by defendant with that opportunity; (3) proximate causation; and (4) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner." *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014), citing *DeBonaventura v. Nationwide Mut. Ins. Co.,* 428 A.2d 1151, 1153 (Del.1981) (internal quotation marks and citation omitted).

To properly plead a reasonable probability of a business opportunity under Delaware law, a plaintiff "must identify a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm." *Id*., citing *Agilent Techs., Inc. v. Kirkland,* 2009 WL 119865, at *7 (Del.Ch. Jan. 20, 2009) (internal quotation marks and citation omitted). "To be reasonably probable, a business opportunity must be something more than a mere hope or the innate optimism of the salesman or a mere perception of a prospective business relationship." *Id.* (internal quotation marks and citations omitted).

The Complaint fails to allege any specific business opportunity lost because of Fairway's alleged conduct. Instead, it refers only to unspecified "anticipated business opportunities." Furthermore, Count VII fails to recite acts that would constitute actionable intentional interference by Defendants, even if true.

### 1.     *Claims Based on "Copying" are Preempted*

Plaintiffs' allegations that Defendant committed interference by "illegally and unlawfully copying the substance of the Program" are preempted by the Copyright Act.  *See* 17 U.S.C. § 301(a); *Orson,  Inc. v. Mirimax Film Corp.*, 189 F.3d 377, 382 (3d Cir. 1999) (State laws are subject to express preemption under Copyright Act § 301 "if they create rights that are 'equivalent' to the exclusive rights within the general scope of copyright"). "Reproduction" is one of the exclusive rights in the copyrighted work granted by the Act. 17 U.S.C. § 106. The

Complaint does not include a copyright count or otherwise state a claim of copyright infringement. Plaintiffs cannot avoid the factual showing required under the Copyright Act by recasting claims of "copying" the content of their programs as unfair competition, either under the Lanham Act, or under common law. *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 37 (2003) (holding the Lanham Act did not create "a species of perpetual patent and copyright"); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 217 (3d Cir. 2002) (adopting "extra element test" by which a cause of action under state law can avoid preemption only if it incorporates extra elements beyond those necessary to prove copyright infringement). *See also, e.g., Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 429 (W.D. Pa. 2008) (and cases cited therein) (quoting 1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, § 1.01[B][3][a][ii]: "Insofar as unauthorized reproduction, distribution, performance or display causes the plaintiff to lose the benefits that would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference do not appear to differ qualitatively from rights under copyright.")

## 2.    *Plaintiffs Fail to Allege Why Certain Alleged Conduct is Not Privileged or How it Proximately Caused Damage*

To the extent Plaintiffs allege that Defendant has been "offering courses for free, with continuing education credits, and certifications," Plaintiffs fail to allege why such conduct is not privileged, or how it proximately relates to Plaintiff's alleged damages. Plaintiffs have stated no reason why Defendants or its affiliates offering continuing education credits and certifications is not a fair and lawful privileged business activity.  Plaintiffs also fail to allege any rationale by which the price, or lack thereof, of Defendant's courses would support a claim of "interference." The foregoing allegations, therefore, even if true, fail to state a claim of interference.

17

This leaves standing in this count only the allegation that Defendant has interfered by "using identical or nearly identical names," which, as exhaustively discussed herein, first requires Plaintiffs to identify the "names" with specificity, and then plead facts to support a reasonable probability that Plaintiffs can establish valid trademark rights in any such names, along with a supportable basis for alleging a likelihood of confusion in connection with a valid mark. Defendant has an absolute privilege to adopt names that are identical or nearly identical to terms that are not valid trademarks, such as generic names, names that are so highly descriptive as to be unenforceable as trademarks, merely descriptive names for which no secondary meaning has been established, and names that do not create a likelihood of confusion with valid marks owned by another.  Accordingly, the Complaint's failure to state a claim for trademark infringement also dooms Plaintiffs' claim of interference.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant respectfully submits that none of the Counts of Plaintiffs' Complaint plausibly state a claim for relief, and the Complaint should therefore be dismissed in its entirety.

Dated:  June 3, 2016

*/s/ Rex A. Donnelly*
Rex A. Donnelly (#3492)
Christopher H. Blaszkowski (#5673)
RATNERPRESTIA
1007 Orange Street, Suite 205
Wilmington, DE 19801
(302) 778-2500 (phone)
(302) 778-2600 (fax)
*rdonnelly@ratnerprestia.com*
*cblaszkowski@ratnerprestia.com*

Attorneys For Defendant
Fairway Independent Mortgage
Corporation