**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MILITARY CERTIFIED RESIDENTIAL SPECIALIST, LLC, et al., | ) ) ) | |
| | | C.A. No. 1:16-cv-00166-SLR |
| Plaintiff, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| FAIRWAY INDEPENDENT MORTGAGE CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

R. KARL HILL (DE2747)
JARED T. GREEN (DE5179)
SEITZ, VAN OGTROP & GREEN, P.A.
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
Phone:  (302) 888-0600
Fax:      (302) 888-0606
khill@svglaw.com
jtgreen@svglaw.com

*Attorneys for Plaintiffs*
*Military Certified Residential Specialists, LLC and*
*MilRES, LLC*

Dated:  August 3, 2016

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................................... i

TABLE OF CITATIONS ........................................................................................................ ii

I.      STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS .............. 1

II.     SUMMARY OF ARGUMENT .......................................................................... 2

III.    CONCISE STATEMENT OF THE FACTS ........................................................ 3

IV.     ARGUMENT ...................................................................................................... 5

        A.      *The Motion to Dismiss Standard* ......................................................... 5

        B.      *Plaintiffs Have Stated a Claim For Violation of the Delaware Deceptive Trade Practices Act* ................................................................. 6

        C.      *Plaintiffs' Marks Are, at a Minimum, Descriptive* ...................................... 8

        D.      *Plaintiffs Have Plausibly Alleged That Military Residential Specialist and Military Certified Residential Specialist Have Acquired Secondary Meaning Within the Consuming Public* ..................................................... 10

        E.      *Plaintiffs Have Properly Alleged Likelihood of Confusion Between MilRES and Certified Military Residential Specialist* .............................. 11

        F.      *Plaintiffs Have Properly Pleaded Dilution Under the Delaware Trademark Act* ..................................................................................... 13

        G.      *Plaintiffs Have Properly Pleaded a Claim for Unjust Enrichment* .......... 14

        H.      *Plaintiffs Have Properly Pleaded a Claim for Intentional Interference with Prospective Business Opportunity* ............................................................. 16

        I.      *Plaintiffs' Allegations State a Claim* ......................................................... 18

V.      CONCLUSION .................................................................................................. 19

## **TABLE OF CITATIONS**

### **Cases**

A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198 (3d Cir. 2000) ... 11, 12, 13

A.J. Canfield Co. v. Honickman, 808 F.2d 291 (3d Cir. 1986) ................................................. 8, 9

Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.,
829 A.2d 143 (Del. Ch. 2003) ........................................................................................ 16

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ........................................................................................ 5

Barnes Grp. Inc. v. Connell Ltd. P'ship, 793 F. Supp. 1277 (D. Del. 1992 ................................. 13

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) .................................................................. 5

Bissessur v. Indiana University Board of Trustees, 581 F.3d 599 (7th Cir. 2009) ........................ 5

Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc., 214 F.3d 432 (3d Cir. 2000) ......... 10

De Bonaventura v. Nationwide Mut Ins. Co., 428 A.2d 1151 (Del. 1981) ............................. 16, 17

Dranoff-Perlstein Assocs. v. Skalr, 967 F.2d 852, 857 (3d Cir. 1992) ...................................... 8, 9

Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303 (3d Cir. 2014) ............................................. 16

Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246 (2009) .................................................... 5, 14

Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060 (Del. 1988) ...................................... 14

Ford Motor Co. v. Summit Motor Prods., 930 F.2d 277 (3d Cir. 1991) ...................................... 8

Fowler v. UMPC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) ................................................... 5

Haney v. Blackhawk Network Holdings, Inc.,
2016 Del. Ch. LEXIS 40 (Del. Ch. Feb. 26, 2016) ...................................................... 16

Interspace Corp. v. Lapp, Inc., 721 F.2d 460 (3d Cir. 1983) ..................................................... 12

J & J Snack Foods Corp. v. Earthgrains Co., 220 F.Supp.2d 358 (D.N.J. 2002) ........................ 10

Keurig, Inc. v. Strum Foods, Inc., 769 F. Supp. 2d 699 (D. Del. 2011) ....................................... 6

Monsanto Co. v. Syngenta Seeds, Inc., 443 F. Supp. 2d. 648 (D. Del. 2006) .............................. 6

Nemec v. Shrader, 991 A.2d 1120 (Del. 2010) ........................................................................... 14

Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178 (5th Cir. 1980) .................................................... 10

State ex rel. Brady v. Preferred Florist Network, Inc., 791 A.2d 8 (Del. Ch. 2001) ...................... 7

State ex rel. Brady v. Wellington Homes, Inc.,
2003 Del. Super. LEXIS 204 (Del. Super. Aug. 20, 2003) ........................................................... 7

Sun-Fun Products, Inc. v. Suntan Research and Development, Inc.,
656 F.2d 186 (5th Cir. 1981) ...................................................................................................... 10

Toro Co. v. Textron, Inc., 499 F. Supp. 241 (D. Del. 1980).......................................................... 6

**Statutes**

Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532 ................................................. 6, 7, 8

6 Del. C. § 3301 ............................................................................................................................ 13

**Rules**

Rule 12(b)(6)................................................................................................................................... 5

**Other Authorities**

Restatement (Second) of Torts§ 767............................................................................................ 17

I.      **STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**

On March 17, 2016, Plaintiffs Military Certified Residential Specialist, LLC ("MCRS") and MilRES, LLC ("MilRES") (together "Plaintiffs") filed their Complaint against Defendant Fairway Independent Mortgage Corporation ("Fairway" or "Defendant") alleging trademark infringement, false designation, trademark dilution, unfair competition, unjust enrichment, and intentional interference with prospective business advantage.  D.I. 1.

On June 3, 2016, Fairway filed a motion to dismiss and brief in support of its motion. This is Plaintiffs' Answering Brief in opposition to Defendant's motion to dismiss.

II.     **SUMMARY OF ARGUMENT**

Plaintiffs' Complaint alleges facts when, taken as true, state plausible claims for relief against Defendant.  The facts, as alleged, state that Fairway acted intentionally and knowingly in counterfeiting Plaintiffs' trademarks, course content, logo, and related materials in an effort to unfairly compete against Plaintiffs and to confuse real estate agents nationwide.

Defendant's arguments in its motion to dismiss are largely factual and should be reserved for summary judgment. However, at this stage of the proceedings, with Plaintiffs being given the benefit of every inference, Plaintiffs have stated plausible claims for relief and Defendant's motion must be denied.

### III.     <u>CONCISE STATEMENT OF THE FACTS</u>

As set forth in the Complaint, Howard G. West ("Mr. West") is a nationally recognized speaker, real estate author, and experienced real estate broker. (Complaint at ¶ 22).  Mr. West's reputation in the real estate field is beyond question. <u>Id</u>.  Both his name and the entities he is associated with generate substantial goodwill within the real estate community.  <u>Id</u>.  Since 2011, MilRES, founded by Mr. West, has continuously used the name Military Residential Specialist in connection with educational programs and classes that MilRES and Mr. West designed and holds throughout the United States.  (Complaint at ¶ 1).  These classes are for real estate agents to gain knowledge and expertise to assist active duty personnel, veterans, and other former military personnel and their families with real estate services (the "Program"). <u>Id</u>.  After taking the Program, real estate agents obtain a certification as a specialist in this niche area.  The Program was the first of its kind.  <u>Id</u>.

Plaintiffs invested a great deal of resources researching, designing, developing, and marketing the Program. (Complaint at ¶ 2).  Plaintiffs have also spent a considerable amount of time creating and distributing a Field Manual and other training materials which are provided to program attendees, as well as developing a website and a logo.  <u>Id</u>.  In connection with the Program and related written materials, Plaintiffs registered the mark MilRES on the principal registry of the United States Patent and Trademark Office, and the marks Military Residential Specialist and Military Certified Residential Specialist on the supplemental registry.  Plaintiffs' Program and the related trademarks are widely known within their target market: real estate agents.  The Program has been administered in over forty states.  (Complaint at ¶ 3).

In early 2012, Louise Thaxton, an agent of Fairway, attended a developmental workshop conducted by MilRES/Military Residential Specialist designed to certify instructors to administer the Program to real estate agents.  At the workshop, Thaxton and Fairway were given a copy of

3

written materials bearing the MilRES and Military Residential Specialist marks and logo (Complaint at ¶24) and explicitly informed that all materials and marks were trademarked and/or copyrighted.  After attending the workshop, Fairway launched a program to certify real estate agents in the same niche area that Plaintiffs' course provides certification.  Fairway used the name "Certified Military Residential Specialist", a logo nearly identical to MilRES, a website, and was offering a course which mimicked and copied Plaintiffs' Program and written materials. Complaint *passim*.  Defendant intentionally used the name Certified Military Residential Specialist to confuse real estate agents into believing it was the same class offered by Plaintiffs and to use Plaintiffs' goodwill as its own.  Id.  Moreover, Defendant created a logo that is substantially similar to Plaintiffs' in order to further confuse potential attendants of Plaintiffs' classes.  The Defendant's description of its course is nearly identical to the description previously used by Plaintiffs describing their program.

On August 14, 2014, Fairway Mortgage, through associate general counsel, in response to a cease and desist letter, represented that Defendant's program was not directed to real estate professionals.  (Complaint at ¶ 27).  That representation was false when made as Defendant continued to specifically target "real estate professionals" countrywide, attracting thousands of real estate agents, a number of who believed they were taking Plaintiffs' class.  In fact, in April of 2015 and May of 2016, Defendant gave classes in Delaware after marketing to real estate agents and touting that they could be certified as a "military residential specialist."  (Complaint at ¶¶ 29, 34 and corresponding exhibits).  As alleged, many real estate agents across the country were actually confused by Defendant's name and indicated to Mr. West that they had taken his class and obtained a certification from Plaintiffs, when, in fact, they had not.  Complaint *passim*. This illegal conduct has damaged Plaintiffs.

IV.     **ARGUMENT**.

    *A.     The Motion to Dismiss Standard*

Rule 12(b)(6) tests the legal sufficiency of a pleader's claim for relief.  When a claim is challenged under Rule 12(b)(6), the court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party.  See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 249 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  No claim will be dismissed simply because the trial judge disbelieves the allegations or believes that recovery is remote or unlikely.  See Twombly, 550 U.S. at 555-56.  Neither "detailed factual allegations" nor evidentiary-level factual showings are required of a pleader to survive a motion to dismiss under Rule 12(b)(6), and pleaders are entitled to "the benefit of imagination".  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly 550 U.S. at 555; Fowler v. UMPC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009); Bissessur v. Indiana University Board of Trustees, 581 F.3d 599, 602-3 (7th Cir. 2009).

    Pleaders must allege enough facts to raise their claims beyond the level of speculation, and must "nudge their claims across the line from conceivable to plausible".  Iqbal, 556 U.S. at 678; Twombly, 544 U.S. at 570.  To cross into "the realm of plausible liability", the allegations must be factual and suggestive as opposed to conclusory and neutral.  Twombly, 544 U.S. at 557 n.5.

    Plaintiffs have made allegations that are both factual and suggestive of legal wrongdoing on the part of Fairway and Plaintiffs' claims must survive.

**B.      *Plaintiffs Have Stated a Claim For Violation of the Delaware Deceptive Trade Practices Act***

Plaintiffs have made sufficient allegations against Defendant for violating the Delaware Deceptive Trade Practices Act (the "DTPA") to withstand a motion to dismiss.  The DTPA prohibits conduct that "[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services" or that "causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another" or that generally "creates a likelihood of confusion or of misunderstanding."  6 Del. C. §§ 2532 a(2), a(3) & a(12).  "The DTPA has a lower burden of proof than the Lanham Act since 'a complainant need not prove competition between the parties or actual confusion or misunderstanding' to prevail in an action under the DTPA."  Keurig, Inc. v. Strum Foods, Inc., 769 F. Supp. 2d 699, 712 (D. Del. 2011); 6 Del. C. § 2532(b).

Defendant quotes Monsanto Co. v. Syngenta Seeds, Inc. for the proposition that the DTPA "affords no greater protection than the Lanham Act."  443 F. Supp. 2d. 648, 653 (D. Del. 2006).  Defendant takes that statement out of context, especially in light of the fact that the court in Monsanto allowed allegations under the DTPA to remain.  The court did not mean to insinuate that the Lanham Act and the DTPA are coextensive and that the Lanham Act supersedes the DTPA, as Defendant argues.  The Monsanto court cited to Toro Co. v. Textron, Inc., 499 F. Supp. 241, 249 n.17 (D. Del. 1980), as support for its holding that two DTPA claims failed for the same reasons that the Lanham Act allegations failed.  However, the holding in Toro was case and fact specific.  In the relevant part of footnote 17 in Toro, the court stated that, "I have concluded that, in this case, Toro is entitled to no greater *relief* for common law unfair competition or disparagement or for violation of the Deceptive Trade Practices Act than for violation of the Lanham Act.  Accordingly, I shall limit by discussion to the Lanham Act."  Id.,

(emphasis added).  The reason for the limitation was relief based, not liability based.  The court went on to find that Toro was only entitled to injunctive relief, which was the same under any theory.  Had Toro proven its monetary damages, it stands to reason that the court would have undergone an analysis under both the DTPA and the Lanham Act.  If the two acts were coextensive and afforded plaintiffs the same protection for identical acts of defendants, the Lanham Act would supersede the DTPA. It does not.  The DTPA covers a far broader spectrum of unfair competition and has a lower burden of proof.  The DTPA is "remedial in nature and liberally construed."  State ex rel. Brady v. Preferred Florist Network, Inc., 791 A.2d 8, 20 (Del. Ch. 2001).

Defendant's argument that Plaintiffs must plead "specific and valid trademark rights" in order to sustain an action under the DTPA is without merit. Op. Br. at 12.  There is no requirement that to be afforded the protection of the DTPA that a trademark be at issue.  See e.g., State ex rel. Brady v. Wellington Homes, Inc., 2003 Del. Super. LEXIS 204 (Del. Super. Aug. 20, 2003) (DTPA claims allowed where no trademarks at issue).  Assuming, arguendo, that Plaintiffs have failed to plead valid trademarks, they are still entitled to relief under the DTPA because Defendants have created likelihood of confusion (and, in fact, actual confusion) by naming and marketing its program with a nearly identical trade name, description,  and by using a nearly identical logo and related materials.

Plaintiffs' allegations that Defendant's agent attended Plaintiffs' class, that Defendant used Plaintiffs' materials to illegally counterfeit Plaintiffs' Program and materials to kick-start its own class, used a nearly identical name for its class,  marketed the class to the same real estate professionals, and has caused actual confusion in the target market is sufficient to state a claim

for violating the Delaware Deceptive Trade Practices Act.   Accordingly, Defendants' motion as it relates to Plaintiff's claims under the DTPA should be DENIED.

### C.   *Plaintiffs' Marks Are, at a Minimum, Descriptive*

Defendant's argument to dismiss certain trademark counts because Plaintiffs' did not allege that their marks of Military Residential Specialist and Military Certified Residential Specialist are descriptive and capable of being a valid trademark is without merit.   Plaintiffs' marks are, at a minimum, descriptive and perhaps suggestive[1].   "The descriptive-suggestive borderline is hardly a clear one."   Dranoff-Perlstein Assocs. v. Skalr, 967 F.2d 852, 857-58 (3d Cir. 1992) (citations omitted).   "A term is suggestive if it requires imagination, thought or perception to reach a conclusion as to the nature of goods."   Id., citing A.J. Canfield Co. v. Honickman, 808 F.2d 291, 297 (3d Cir. 1986).   Here, it is just as conceivable that an individual reads or hears Military Residential Specialist or Military Certified Residential Specialist and associates Plaintiffs' goods and services with construction of military barracks as it is that he/she associates them with the teaching of courses to real estate agents to educate them on the residential needs of current and former military personnel.   To that extent, it is at least arguable that Plaintiffs' marks are suggestive.

"A mark is considered descriptive if it describes the intended purposed, function, or use of the goods; of the size of the goods, of the class of users of the goods, of a desirable characteristic of the goods, or of the end effect upon the user."   Ford Motor Co. v. Summit Motor Prods., 930 F.2d 277, 292 n.18 (3d Cir. 1991) (internal quotations and citations omitted) (emphasis added).   Both Military Residential Specialist and Military Certified Residential

---

[1]   Defendant's "deceptive nature" argument is ironic considering its course was named nearly identically to Plaintiffs'.  In any event, there is no requirement that Plaintiffs plead that the mark of Military Certified Residential Specialist is *not* deceptive, that is a defense that Defendant must prove.  The characterization of the mark is a factual issue and should not be determined at this stage of the case.

Specialist plausibly describe precisely the end effect upon those real estate agents who take Plaintiffs' course: they will become specialists in assisting military personnel with their residential needs.

Moreover, Plaintiffs' marks of Military Residential Specialist and Military Certified Residential Specialist are not generic.  "The line between highly descriptive marks and generic names is as fuzzy and undefinable as the line between descriptive marks and suggestive marks." Skalr, 967 F.2d at 859 (citations omitted).  "In deciding whether a term is generic, courts have focused on the availability of commonly used alternatives."  Id., citing Honickman, 808 F.2d at 306 n. 20.  By this reasoning, Fairway Independent Mortgage, Bank of America, and countless other marks would be deemed generic when they are not.  Defendant undergoes a dictionary definition of each individual word that comprises Military Residential Specialist and concludes, *ipso facto*, that the term as a whole must be generic.  Defendant fails to analyze the term Military Residential Specialist as a phrase in its totality.[2]  See Dranoff-Perlstein Assocs. v. Skalr, 967 F.2d 852 (3rd Cir. 1992) (find that that though plaintiff's mark was generic, it was combined with another term and validity of the mark had to be determined by looking at the mark as a whole).  While it is premature to undergo an analysis of the strength of Plaintiffs' marks at this stage of the proceedings, there are a multitude of alternatives available to competitors of Plaintiffs' classes to describe their own classes.  In fact, since Plaintiffs started their Program, several others have been founded using common alternatives and none of them, except for Defendant, have infringed upon Plaintiffs' marks or have created confusion among consumers.

---

[2] Defendant does not undergo an analysis of Military Certified Residential Specialist, but the logic that applies herein to Military Residential Specialist is equally appropriate when applied to Military Certified Residential Specialist.

Furthermore, Defendant's motion to dismiss is premature because "the characterization of a mark is a factual issue for the jury."  Id.; citing Sun-Fun Products, Inc. v. Suntan Research and Development, Inc., 656 F.2d 186 (5th Cir. 1981); Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178 (5th Cir. 1980).   As such, the characterization of Plaintiffs' marks is not yet ripe for determination and Defendant's motion should be DENIED.

### D. Plaintiffs Have Plausibly Alleged That Military Residential Specialist and Military Certified Residential Specialist Have Acquired Secondary Meaning Within the Consuming Public

Defendant's argument that Plaintiffs' Complaint fails to state a claim because of an alleged failure to plead secondary meaning of the marks on the supplemental registry is without merit.  Even if Plaintiffs' marks are merely descriptive, which Plaintiffs do not concede, the Complaint adequately states a plausible claim of secondary meaning.

"Secondary meaning is shown when the primary significance of the term in the minds of the consuming public is not the product but the producer."  J & J Snack Foods Corp. v. Earthgrains Co., 220 F.Supp.2d 358, 380 (D.N.J. 2002) (internal quotations omitted) (emphasis added).  "The Third Circuit has listed ten non-exclusive factors to consider when determining the existence of secondary meaning: (1) the extent of sales and advertising that leads to consumer association; 2) length of use; 3) exclusivity of use; 4) the fact of copying; 5) customer surveys; 6) customer testimony; 7) the use of the mark in trade journals; 8) the size of the company; 9) the number of sales; 10) the number of customers; and 11) actual confusion."  Id. citing Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000).   Plaintiffs' Complaint has alleged that Plaintiffs have expended substantial sums and resources to develop and then advertise and proliferate their marks among the consuming public: real estate agents.  Complaint at ¶¶ 2, 20, 21.  Plaintiffs have also alleged that Defendant has intentionally copied their marks, Program, and related materials in order to reap the benefits of the goodwill and

advertising of Plaintiffs.  Complaint *passim*.    Plaintiffs have further alleged that they had used their marks exclusively for three (3) years prior to Defendant's willful copying.  Complaint at ¶¶ 1, 4, 39.  Plaintiffs have alleged that real estate agents have taken their classes in over forty (40) states.  Complaint at ¶ 3.  Further, Plaintiffs have alleged actual confusion.  Complaint *passim*. Taken together as true, and without the benefit of discovery, Plaintiffs have alleged sufficient facts to show that Military Residential Specialist and Military Certified Residential Specialist acquired a secondary meaning among real estate professionals -- the same group targeted by Defendant.

> **E.    Plaintiffs Have Properly Alleged Likelihood of Confusion Between MilRES and Certified Military Residential Specialist[3]**

Defendant argues, simplistically, that Plaintiffs' mark of MilRES is incapable of causing a likelihood of confusion among consumers because MilRES and Certified Military Residential Specialist are not sufficiently similar to create confusion.  First and foremost, Defendant's motion should be denied because likelihood of confusion is a factual question that should not be decided at this stage of the proceedings.  A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000).

Second, Plaintiffs have alleged sufficient facts to survive a motion to dismiss and the record is not yet developed for the court to make a determination using the Lapp factors.  In order to prove a violation of the Lanham Act, a plaintiff must demonstrate that 1) it has a valid and legally protectable mark; 2) it owns the mark; and 3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion.  Id.  Defendant concedes that factors

---

[3] Defendant only references MilRES in its likelihood of confusion argument because it presumes that Military Residential Specialist is not a legally valid mark.  However, as shown in sections C and D, *supra*, it is protectable and trademarked.  The likelihood of confusion between Military Residential Specialist and Certified Military Residential Specialist is, at this stage, readily apparent.

1 and 2 are satisfied by Plaintiffs with regard to MilRES, but argue that Plaintiffs' cannot show a likelihood of confusion.  Op. Br. at 10-11.  The Third Circuit utilizes the "Lapp factors" to analyze likelihood of confusion.  Id.  The non-exhaustive list of factors to consider in determining whether there is a likelihood of confusion between marks is as follows:

1. The degree of similarity between the owner's mark and the alleged infringing mark;

2. The strength of the owner's mark;

3. The price of goods and other factors indicative of care and attention expected of consumers when making a purchase;

4. The length of time the defendant has used the mark without evidence of actual confusion arising;

5. The intent of the defendant in adopting the mark;

6. The evidence of actual confusion;

7. Whether the goods, competing or not, are marketed through the same channels of trade and advertised through the same media;

8. The extent to which the targets of the parties' sales efforts are the same;

9. The relationship of goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; and

10. Other factors suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's mark.

Id. at 215.  Contrary to Defendant's assertion, "Lapp's suggestion that, for competing goods, the court 'need rarely look beyond the mark itself,' Interspace Corp. v. Lapp, Inc., 721 F.2d 460, 462 (3d Cir. 1983), may be an exercise in unjustified optimism; cases are often not easy and courts will frequently need help in sorting out the likelihood of confusion."  A & H Sportswear, 327 F.3d at 212.  The Third Circuit has "certainly never held that a court may not look beyond the

marks themselves to determine likelihood of confusion." Id. at 214.  Plaintiffs' believe that consumers immediately associate the mark of MilRES with the phrase and mark "Military Residential Specialist."   This association requires that the Court look beyond the marks themselves.

It is premature to undergo an analysis of the Lapp factors at the motion to dismiss stage and Plaintiffs have alleged facts that create a plausible likelihood of confusion between MilRES and Certified Military Residential Specialist.   Plaintiffs have either alleged or it is readily apparent that: there is some similarity between the two marks, Defendant acted intentionally in an effort to confuse, Plaintiffs' and Defendant's classes are marketed through the same channels of trade and using the same media, the targets of the parties' sales efforts are identical, and that there has been actual confusion among consumers.   Complaint *passim*.   In fact, Fairway has misrepresented its true intention by claiming that it was not targeting real estate professionals. Taken as true and drawing all inferences in Plaintiffs' favor, the above allegations are more than sufficient to survive a motion to dismiss, and Defendant's motion must be DENIED.

### F.   *Plaintiffs Have Properly Pleaded Dilution Under the Delaware Trademark Act*

Plaintiffs have alleged that Defendant's conduct violates the Delaware Trademark Act, 6 Del. C. § 3301 *et seq*. and that Defendant has diluted Plaintiffs' trademarks.  Fairway's motion to dismiss this count is without merit.  Fairway conflates the requisite proof at trial with pleading requirements.  Op. Br. at 11-12.  Fairway argues that Plaintiffs must allege that there is "some degree of 'mental association between the marks'" in order to plead dilution.  Op. Br. at 12, citing Barnes Grp. Inc. v. Connell Ltd. P'ship, 793 F. Supp. 1277, 1304 (D. Del. 1992.  Barnes makes no such holding.   Barnes is a post-trial opinion that discusses the requisite proof at trial after substantial discovery, not whether a claim was adequately pleaded.  Barnes, 793 F. Supp at 1304.

Defendant's newfound cart-before-the-horse pleading requirements for dilution should be rejected.

Plaintiffs have plead the rights to valid and enforceable trademarks, whether they be on the principal registry or the supplemental registry, and that Defendant has marked its product nearly identically and has marketed it to the same consumers.  That alone is sufficient to withstand a Defendant's motion to dismiss the dilution claim.  Whether or not Plaintiffs have the requisite proof can be argued later, but at this stage Defendant's motion must be DENIED.

### G.    Plaintiffs Have Properly Pleaded a Claim for Unjust Enrichment

Plaintiffs have pleaded a valid claim for unjust enrichment.  Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."  Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1062 (Del. 1988).  "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."  Nemec v. Shrader, 991 A.2d 1120, 1130 (Del. 2010); citing Jackson Nat. Life Ins. Co. v. Kennedy, 741 A.2d 377, 394 (Del. Ch. 1999); Cantor Fitzgerald, L.P. v. Cantor, 724 A.2d 571, 585 (Del. Ch. 1998).

Defendant makes two arguments in support of its motion to dismiss Plaintiffs' unjust enrichment claim: (1) that Plaintiffs must plead a valid trademark right to support an unjust enrichment claim; and (2) that Plaintiffs have not properly pleaded enrichment by Defendants. Both of Defendant's arguments are unsupportable.

Regarding Defendant's first argument, Defendant concludes that, "[s]howing the 'absence of justification' and the 'relation between the enrichment and impoverishment' needed to establish a plausible claim for unjust enrichment requires non-conclusory allegations supported by the

same types of factual showings that must be pleaded to state a plausible claim of a valid trademark right in specifically identified marks, along with a plausible allegation that *likelihood of confusion* between some name or logo of Defendant and an asserted valid mark of Plaintiff proximally cause the alleged enrichment and impoverishment." Op. Br. at 14.  Not surprisingly, Defendant fails to cite to a single case that supports this new legal proposition.  There is simply no case that supports Defendant's argument that to assert a claim for unjust enrichment there must be a valid trademark at issue and that a plaintiff must plead likelihood of confusion between plaintiff and defendant's marks or logos.  Plaintiffs have pleaded that Defendant, after being provided the protected substance of its program, acted intentionally in adopting a name that is substantially similar to theirs and in using a logo and related materials that are substantially similar to theirs.  Plaintiffs have also pleaded that Defendant did so in an effort to create confusion in the marketplace and attract consumers who, but for the confusion created by Defendant, would have taken Plaintiffs' classes.  Those allegations support an inference that Defendant's conduct was without justification (as Plaintiffs' pleaded) and that there is a direct relationship between the enrichment of Defendant and the impoverishment of Plaintiffs. Defendant's motion must be DENIED.

Defendant next argues that Plaintiffs have failed to plead that Defendant was enriched by their unjustified conduct.[4]  Op. Br. at 15.  Defendant's meritless argument is supported only by

---

[4] In footnotes 1 and 6, and on page 15 of its Opening Brief, Fairway refers to the "American Warrior Initiative" as a non-profit initiative/organization that is affiliated with its program.  This information, even if true, should not be considered at the motion to dismiss stage.  Plaintiffs should have the opportunity to explore the relationship between Fairway and the initiative in discovery.  Further, Plaintiffs understand that this initiative was formed in 2016, perhaps in response to the claims asserted herein.  In addition, a simple internet search of "american warrior initiative" shows that Fairway sponsors the initiative, advertises its classes together with the initiative, and shares an address in Leesville, LA, which is a Fairway office operated by Louise Thaxton.

the fact that Plaintiffs have pleaded, in part, that Defendant has been enriched by receiving *revenue* as opposed to it receiving *profits.*  Id.[5]   While Plaintiffs' ultimate damages on the unjust enrichment claim will be ascertained through discovery of Defendant's revenues and then examining how they *profited*, including whether Defendant is using its counterfeit course to generate mortgage business, Plaintiffs at this stage cannot possibly specifically plead what Defendant's profits are. See Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 312 (3d Cir. 2014) (cited by Defendant and applying Virgin Islands law, but stating that "[a]t the pleadings stage, it is often not possible for a plaintiff to recount with specificity to what extent a defendant was enriched by her misconduct.").   Moreover, applying Delaware law, Plaintiffs do not need to. "Damages need not be proven with specificity at the motion to dismiss stage."  Haney v. Blackhawk Network Holdings, Inc., 2016 Del. Ch. LEXIS 40, at *18 (Del. Ch. Feb. 26, 2016); see also Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P., 829 A.2d 143, 156 (Del. Ch. 2003) ("Proof of [alleged] damages and of their certainty need not be offered in the complaint in order to state a claim.").   Therefore, Defendant's argument regarding the sufficiency of Plaintiffs' damages allegation is without merit and Defendant's motion must be DENIED.

### H.    *Plaintiffs Have Properly Pleaded a Claim for Intentional Interference with Prospective Business Opportunity*

To state a claim for tortious interference with prospective business relations, a party must allege: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages." De Bonaventura v. Nationwide Mut Ins. Co., 428 A.2d 1151, 1153 (Del. 1981).   Plaintiffs' Complaint properly

---

[5]  To be sure, other paragraphs of the Complaint assert that Fairway's illegal conduct has caused damages including, but not limited to, the "loss of actual and/or potential sales to Defendant." (Complaint at ¶¶ 6, 38, 40, 41).  All of these damages allegations have been incorporated into Count VI by reference.

alleges all of the above.  Defendant's argument that Plaintiffs have not identified a specific party who was prepared to enter into a business relationship with them is without merit.  Plaintiffs, without the aid of discovery to ascertain the total universe of individuals who were deceived by Defendant's conduct, have alleged that Defendant has intentionally diverted real estate agents to their own course by confusing them into believing they were taking Plaintiffs' course.  See e.g. Complaint at ¶¶ 29, 30, 32, 33, 37.  Plaintiffs believe, and have alleged, that, but for Defendant's intentional interference, these real estate agents would have entered into a business relationship with Plaintiffs.  Plaintiffs will learn more during discovery, but at this stage Plaintiffs' assertion that "numerous agents across the country" were led to believe that they were taking Plaintiffs' Program sufficiently states a claim.  (See Complaint at ¶ 38).

Defendant's preemption argument does not defeat Plaintiffs' claims.  Assuming that the portion of Plaintiffs' intentional interference claim as it relates to "copying" is preempted by copyright law, Plaintiffs have still alleged intentional interference in that Defendant was and is "using identical or nearly identical names, and offering the courses for free and with continuing education credits, and offering "certifications."  Complaint at ¶ 72.

Lastly, Fairway's argument that Plaintiffs' must plead an absence of privilege is unfounded.  Privilege is a defense that must be proven by Defendant.  Moreover, privilege is a highly factual issue that is not ripe at the motion to dismiss stage.  "The determination of whether an actor's conduct is "privileged" or "not improper" under § 767 of the RESTATEMENT and the RESTATEMENT (SECOND) is particularly factual, depending on a wide variety of factors to be applied to all of the facts and circumstances in a given case."  De Bonaventura v. Nationwide Mut. Ins. Co., 428 A.2d 1151, 1154 (Del. 1981).  Plaintiffs have stated a valid claim for

intentional interference with prospective business opportunity and Defendant's motion must be DENIED.

### I.     *Plaintiffs' Allegations State a Claim*

Plaintiffs' Complaint, when viewed as a whole, states valid claims for wrongdoing on the part of Fairway.  Plaintiffs have alleged, and it is to be taken as true at this stage, that Defendant, through Louise Thaxton, attended Plaintiffs' workshop and then, in short order, counterfeited the program, name, marks, and related materials in a successful effort to confuse consumers into attending their knock-off course.   The deception and confusion created by Defendant has damaged Plaintiffs.    Further, Plaintiffs have alleged that Defendant, through counsel, has intentionally misrepresented to Plaintiffs the nature and target market of their course.   In the event the Court would like more specific and detailed allegations, Plaintiffs request leave to amend.

## V.   __CONCLUSION__.

For the foregoing reasons, Defendant's motion to dismiss should be DENIED.


SEITZ, VAN OGTROP & GREEN, P.A.

/s/ Jared T. Green
R. KARL HILL (DE2747)
JARED T. GREEN (DE5179)
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
Phone:  (302) 888-0600
Fax:      (302) 888-0606
khill@svglaw.com
jtgreen@svglaw.com

*Attorneys for Plaintiffs*
*Military Certified Residential Specialists, LLC and*
*MilRES, LLC*

Dated:  August 3, 2016