IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MILITARY CERTIFIED RESIDENTIAL SPECIALIST, LLC and MILRES, LLC<br><br>Plaintiffs,<br><br>v.<br><br>FAIRWAY INDEPENDENT MORTGAGE CORPORATION<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 16-166-SLR<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM**

At Wilmington this 26th day of April, 2017, having reviewed the papers submitted in connection with defendant's motion to dismiss (D.I. 9), the court issues its decision as follows:

1. **Background.** Military Certified Residential Specialist, LLC ("MCRS") and MilRES, LLC ("MR") (collectively, "plaintiffs") are Delaware limited liability companies with a principal place of business in Wilmington, Delaware. (D.I. 1 at ¶¶ 7-8) Plaintiffs provide "educational programs and classes . . . through which real estate agents can gain knowledge and expertise to assist active duty personnel, veterans, and other former military personnel and their families with real estate services, and obtain a certification as a specialist in this area." (D.I. 1 at ¶ 1) Howard G. West ("West") is owner of both MCRS and MR. (D.I. 1 at ¶¶ 7-8) Fairway Independent Mortgage Corporation ("defendant") is a mortgage lending company organized under the laws of the State of Texas with a principal place of business in Plano, Texas. (Id. at ¶¶ 9, 27) Defendant offers courses "to provide expertise to those working with veterans and active duty military to assist them with housing issues." (Id. at ¶ 25)

2. On March 17, 2016, plaintiffs filed an action against defendant, alleging that defendant (1) infringed on a registered trademark in violation of 15 U.S.C. § 1114(1)(a), (2) violated 15 U.S.C. § 1125(a) for false designation of origin, (3) engaged in unfair competition in violation of 6 Del. C. § 2531, (4) violated Delaware common law for trademark infringement and unfair competition, (5) were unjustly enriched in violation of Delaware common law, and (6) intentionally interfered with a prospective business advantage. (D.I. 1) Defendant moved to dismiss for failure to state a claim for relief under Federal Rules of Civil Procedure 12(b)(6). (D.I. 10) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

3. **MilRES.** In June 2011, MR began using the mark "MilRES" "in connection with educational programs." (D.I. 1 at ¶ 13) The following month, MR applied to the United States Patent and Trademark Office ("USPTO") for the "MilRES" trademark ("MilRES"). (*Id.* at ¶ 14) The mark published for opposition on November 29, 2011 and was issued on the Principal Register on February 14, 2012. (*Id.* at ¶ 15) "MilRES" is registered in international class 041 for "[e]ducational services, namely, conducting training courses in the fields of providing services to military, veterans and their families and distribution of training materials in connection therewith." USPTO Reg. No. 4,098,984. The "MilRES" "mark consists of standard characters without claim to any particular font, style, size, or color."[1] *Id.*

---

[1] Plaintiffs allege that MR has "established a drawing mark," which appears to incorporate the "MilRES" and "MILITARY RESIDENTIAL SPECIALIST" word marks.



(D.I. 1 at ¶ 13) Plaintiffs allege that "[d]efendant's use of plaintiffs' unregistered marks and associated trade dress . . . ha[s] caused and will continue to cause confusion as to the source of defendant's goods and services." (D.I. 1 at ¶ 63)

2

4. **Military Residential Specialist.** MR began using the mark "MILITARY RESIDENTIAL SPECIALIST" in June 2011, "in connection with educational programs and classes . . . through which real estate agents can gain knowledge and expertise to assist active duty personnel, veterans, and other[s] . . . with real estate services." (D.I. 1 at ¶¶ 1, 16) The following month, MR applied to the USPTO for the trademark "MILITARY RESIDENTIAL SPECIALIST." (Id. at ¶ 16) The USPTO denied registration on the Principal Register because it "merely describes the purpose and/or provider of applicant's services," and MR requested registration on the Supplemental Register. See Response to Office Action, USPTO Serial No. 85363288 (Apr. 24, 2012). On July 3, 2012, the USPTO issued the mark "MILITARY RESIDENTIAL SPECIALIST" on the Supplemental Register in international class 041 for "[e]ducational services, namely conducting training courses in the field of providing services to the military, veterans and their families and distribution of training material in connection therewith." USPTO Reg. No. 4,169,442. The "mark consists of standard characters without claim to any particular font, style, size, or color." Id.

5. **Military Certified Residential Specialist.** MCRS began using the mark "MILITARY CERTIFIED RESIDENTIAL SPECIALIST" in January 2013. (D.I. 1 at ¶ 17) MCRS subsequently filed a trademark application with the USPTO on April 11, 2013. (Id.) After a rejection for descriptiveness reasons, MCRS accepted registration on the Supplemental Register. See Response to Office Action, USPTO Serial No. 85901499 (Mar. 18, 2015). On May 19, 2015, the USPTO issued the mark "MILITARY CERTIFIED RESIDENTIAL SPECIALIST" on the Supplemental Register in international class 041 for "[e]ducational services, namely providing training of real estate agents for certification in the field of real estate services for veterans and active duty service members." USPTO Reg. No. 4,741,044. The "mark consists of standard characters without claim to any particular font, style, size, or color." Id.

**6. Plaintiffs' Use.** Plaintiffs' three "marks appear prominently on [their] website, web pages, advertisements, and course materials...." (D.I. 1 at ¶ 21) Plaintiffs contend that they "invested a great deal of resources in researching, designing, developing, and marketing" their program. (*Id.* at ¶ 2) Plaintiffs created and distributed a field manual and other training materials. (*Id.*) Plaintiffs also claim to "have continuously advertised, marketed, and distributed the program through the United States under these trademarks or names." (*Id.* at ¶ 20)

7. **Fairway.** On or around February 17-18, 2012, MR led a workshop in Greenville, Delaware. (*Id.* at ¶ 23) Defendant's representative, Ms. Louise Thaxton ("Thaxton"), attended the workshop. (*Id.*) Thaxton was "given written materials bearing the "MilRES" and "MILITARY RESIDENTIAL SPECIALIST" marks and logo." (*Id.* at ¶ 24) In April 2013, defendant began using the mark "CERTIFIED MILITARY RESIDENTIAL SPECIALIST" with its residential mortgage programs. (D.I. 10 at 6 n.3) According to plaintiffs, in May 2014, defendant began "using the name 'Certified Military Residential Specialist,' a logo nearly identical to [MR], and a website[2] [] that offered a course to provide expertise to those working with veterans and active duty military to assist them with housing issues, and using training materials that mimicked those developed by [plaintiffs]."[3] (D.I. 1 at ¶ 25) In July 2014, plaintiffs sent defendant a cease and desist letter. (*Id.* at ¶ 26) "[S]ettlement discussions . . . did not resolve the dispute between the parties." (*Id.* at ¶ 31) Plaintiffs filed suit in March 2016. (D.I. 1)

8. **Standard of Review.** A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v.*

---

[2] http://certifiedmilitaryresidentialspecialist.com.

[3] Plaintiffs allege that defendant also has used the mark "Military Residential Specialist." (D.I. 1 at ¶ 34) The included flyer for defendant's "2016 Boot Camp" offers those in attendance the ability to "Become certified as a 'Military Residential Specialist.'" (D.I. 1, ex. C at 2)

*Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a three-part analysis when reviewing a Rule 12(b)(6) motion. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d. Cir. 2016). In the first step, the court "must tak[e] note of the elements a plaintiff must plead to state a claim." Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Lastly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citations omitted).

9. Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp.*, 2016 WL 2893844, at *3 (3d Cir. May 18, 2016). Although "an exposition of [the] legal argument" is unnecessary, *Skinner v. Switzer*, 562 U.S. 521 (2011), a complaint should provide reasonable notice under the circumstances. *Id.* at 530. A filed pleading must be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," such that "the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 174 (3d Cir. 2014) (quoting Fed. R. Civ. P. 11(b)). So long as plaintiffs do not use "boilerplate and conclusory allegations" and "accompany their legal theory with factual allegations that make their theoretically viable claim plausible," the Third Circuit has held "pleading upon information and belief [to be]

5

permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott*, 2016 WL 2893844, at *4 (quotation marks, citation, and emphasis omitted).

10. As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

11. **Lanham Act Claims.** Plaintiffs allege trademark infringement under 15 U.S.C. § 1114(1)(a) and false designation of origin under 15 U.S.C. § 1125(a)(1)(A). (D.I. 1 at ¶¶ 42-52) Third Circuit courts "measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). Under these standards, a plaintiff must demonstrate that: (1) the mark is valid and legally protectable; (2) plaintiff owns the mark; and (3) the defendant's use of its mark to identify goods or services is likely to create confusion concerning the origin of the goods or services. *Checkpoint Sys. v. Check Point Software Tech.*, 269 F.3d 270, 279 (3d Cir. 2001). "If the mark at issue [i]s federally registered and ha[s] become incontestable, . . . validity, legal protectability, and ownership are proved." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) (citation omitted). A mark is incontestable if it has been "in continuous use for five years subsequent to the

6

date of... registration and is still in use in commerce." 15 U.S.C. § 1065. "Where a mark has not been federally registered or has not achieved incontestability, validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." *Ford Motor*, 930 F.2d at 291. To determine likelihood of confusion, courts in the Third Circuit employ "the Lapp factors."[4] However, "[i]f products are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves." *A&H Sportswear*, 237 F.3d at 214.

12. **MilRES.** "MilRES" was federally registered on the Principal Register on February 14, 2012, and plaintiffs have continuously used "MilRES" for a period greater than five years.[5] (D.I. 1 at ¶¶ 15, 20) Therefore, plaintiffs have alleged facts sufficient to support validity, protectability, and ownership. *Ford Motor*, 930 F.2d at 291. As to likelihood of confusion, plaintiffs allege that:

> Defendant's prominent use of Certified Military Residential Specialist and Military Residential Specialist names, logos, descriptions, content, and website domain name, which are nearly, if not identical to, Plaintiffs' marks, has caused and will continue to cause confusion, mistake, and deception of purchasers as to the source of origin of Defendant's good[s] and services such that they are likely to believe they are Plaintiffs'.

(D.I. 1 at ¶ 44) As it relates to the "MilRES" mark, plaintiffs allege that defendant's mark, "CERTIFIED MILITARY RESIDENTIAL SPECIALIST," is "nearly, if not identical to, plaintiffs' ["MilRES"] mark[]." (*Id.*) The "MilRES" mark and defendant's mark are not apparently identical or nearly so and, therefore, plaintiffs' allegation is not entitled to the assumption of truth.[6] *Connelly*, 809 F.3d at 787. However, defendant's products and

---

[4] *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).

[5] The complaint was filed on March 17, 2016. (D.I. 1) In the intervening time, plaintiffs' mark has passed its five year mark and is now incontestable.

[6] Plaintiffs aver that "consumers immediately associate the mark of "MilRES" and the mark 'Military Residential Specialist.' . . . [, which] requires that the court look beyond

7

services are highly similar to those offered by plaintiffs, and plaintiffs have alleged that "[n]umerous real estate agents and others have taken [defendant's] class believing it to be the class offered by plaintiffs," i.e., likelihood of confusion. (D.I. 1 at ¶¶ 32, 38) Therefore defendant's motion to dismiss the Lanham Act claims as to the "MilRES" mark is denied.

13. **Marks on the supplemental register.** Plaintiffs' "MILITARY RESIDENTIAL SPECIALIST" and "MILITARY CERTIFIED RESIDENTIAL SPECIALIST" marks (the "Supplemental Marks") are registered on the Supplemental Register. There is no dispute that plaintiffs own these marks and that they are federally registered. (D.I. 10 at 1) However, for a mark on the Supplemental Register, "validity depends on proof of secondary meaning, unless the . . . mark is inherently distinctive." *Ford Motor*, 930 F.2d at 291. Plaintiffs argued that the Supplemental Marks have acquired secondary meaning, because plaintiffs "have expended substantial sums and resources to develop and then advertise and proliferate their marks among the consuming public." (D.I. 13 at 10) Plaintiffs have alleged sufficient facts to support secondary meaning, i.e., in the minds of the consuming public, the primary significance of the term is not the product but the producer. (D.I. 1 at ¶¶ 1, 2, 3, 4, 20, 21, 32, 38, 39) As with the "MilRES" mark, plaintiffs have alleged a likelihood of confusion. (D.I. 1 at ¶¶ 32, 38) Therefore, defendant's motion to dismiss the Lanham Act claims as to the Supplemental Marks is denied.

14. **Delaware trademark dilution.** Plaintiffs allege that defendant's acts "creates a likelihood of injury to plaintiffs' business reputation and/or dilution of the distinctive quality of their marks" under 6 Del. C. § 3301 *et seq.* (D.I. 1 at ¶¶ 53-55) Neither the "MilRES" mark nor the Supplemental Marks are registered under the statute,

---

the marks themselves." (D.I. 13 at 13) This allegation is not in the complaint, nor are there any facts alleged that support the argument.

8

and, "[p]roof of distinctiveness necessary to satisfy the antidilution statutes typically is the same proof used to show inherent or acquired distinctiveness for infringement purposes under the Lanham Act." *Barnes Grp. Inc. v. Connell Ltd. P'ship*, 793 F. Supp. 1277, 1304 (D. Del. 1992). The "MilRES" mark is incontestable under the Lanham Act, and plaintiffs have alleged facts sufficient to support secondary meaning for the Supplemental Marks. Therefore, plaintiffs have pled sufficient facts to go forward with a trademark dilution claim under Delaware law. Defendant's motion is denied with respect to Delaware trademark dilution.

15. **Delaware unfair competition.** Plaintiffs allege that defendant's acts constitute unfair competition under the Delaware deceptive trade practices act ("DDTPA"), 6 Del. C. § 2532, "because, in the course of its business, it has caused, and continues to cause, likelihood of confusion or of misunderstanding as to (a) the source, sponsorship, approval, or certification of the defendant's goods and services by plaintiffs; or (b) affiliation, connection, or association, or certification of the Defendant's goods and services by plaintiffs." (D.I. 1 at ¶ 57) Courts reviewing DDPTA violations apply the same standards as they apply to trademark infringement claims (i.e., valid and protectable mark, plaintiff owns mark, and likelihood of confusion). *Keurig, Inc. v. Sturm Foods, Inc.*, 2012 WL 4049799 (D. Del. 2012), citing *Sanofi–Aventis v. Advancis Pharm, Corp.*, 453 F.Supp.2d 834, 847 (D.Del.2006). Plaintiffs' pleading under the Lanham Act is sufficient to support unfair competition under the DDTPA, therefore, defendant's motion is denied with respect to unfair competition.

16. **Delaware common law claims.** Plaintiffs allege that defendant's acts constitute trademark infringement, unfair competition, unjust enrichment, and intentional interference with prospective business advantage under Delaware common law. (D.I. 1 at ¶¶ 60-73) Defendant presents no arguments related to unfair competition. The common law trademark claims, defendant argues, require secondary meaning or

9

inherent distinctiveness. (D.I. 10 at 13) As to unjust enrichment, defendant contends that plaintiffs did not show trademark ownership or a likelihood of confusion. (*Id.* at 14-15) As above, plaintiffs have pled sufficient facts to support common law trademark infringement, therefore, the common law trademark and unjust enrichment claims may proceed.

17. With respect to the intentional interference with prospective business advantage claim, defendant avers that plaintiffs "fail[] to allege any specific business opportunity lost because of [its] alleged conduct," because "under Delaware law, a plaintiff 'must identify a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant.'" (D.I. 10 at 16, citing *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014)) Delaware law does not require a plaintiff to name parties so long that the court "can reasonably infer that specific parties were involved. . . . to support a claim that 'specific prospective business relations' existed." *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009). Plaintiffs have alleged that "[n]umerous agents from across the country have commented to plaintiffs that [defendant's] class has confused real estate agents, military personnel, and the public, and led them to believe that they were taking plaintiffs' class, and obtaining a certification from plaintiffs when they were not." (D.I. 1 at ¶ 38) Based upon this allegation, the court can reasonably infer that specific parties were involved. Therefore, defendant's motion to dismiss the interference claim is denied.

18. **Conclusion.** For the reasons stated, defendant's motion to dismiss (D.I. 9) is denied. An order shall issue.

_____<br>Senior United States District Judge

10